THE STATE OF OHIO, APPELLEE, *v.* WILLIAMS,
A.K.A. SMITH, APPELLANT.

(No. 38142—Decided March 29, 1979.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.
*Mr. Thomas M. Shaughnessy,* for appellant.

PARRINO, J.  This is an appeal from a conviction entered in the Court of Common Pleas. There are two principal issues presented for our review: (1) The admissibility of a telephone call allegedly received from the defendant by the victim of an aggravated robbery; and, (2) The admissibility of evidence which subverts a defendant's right to remain silent. We reverse.

The appellant, Perry Williams, a.k.a. Theodore Smith, was indicted jointly with Bernard Swailes, a.k.a. Melvin Maines, for aggravated robbery, R. C. 2911.01. Williams was tried

separately before a jury and found guilty of the charge. He was sentenced to four to twenty-five years imprisonment.

On January 17, 1977, at approximately 8:30 p.m., Melton Board offered a ride to three stranded motorists, one female and two males. After proceeding a short distance with Board, one of the two male passengers put a gun to Board's head while both men told him to stop and get out of the car. Board left the vehicle and called the police as his assailants drove away in his automobile. Board identified the appellant at trial, a line-up and a preliminary hearing as the man who held the gun to his head.

The appellant was apprehended at approximately 11:30 p.m. that same evening. The police stopped the automobile belonging to Melton Board and found three males and one female in the vehicle. Bernard Swailes, a.k.a. Melvin Maines, was the driver. Christopher Ellington and the appellant were passengers in the rear seat. A .38 caliber revolver was found under the rear portion of the seat in front of the appellant.

Christopher Ellington was called as a state's witness. He testified that Melvin Maines came to his house about 8:30 p.m. on the evening in question and asked Ellington to drive somewhere with Maines. When Ellington entered the automobile being driven by Maines, a woman was sitting in the front seat and a man, identified by Ellington as the appellant, was sitting in the back seat on the passenger side.

The appellant presented an alibi defense. He contended that he spent the evening at his barbershop until about 10:45 p.m. when it closed and merely accepted a ride in the vehicle driven by Maines.

The appellant brought this appeal from the judgment and sentence of the trial court and assigns four errors. For purposes of convenience, the assignments of error will not be discussed in the sequence in which they were assigned.

*"Assignment of Error Number I*

"The trial court erred in allowing testimony relative to an alleged telephone conversation between defendant-appellant and the victim without requiring a proper foundation to be laid by the state."

Melton Board testified that he received a phone call from a man who identified himself as Theodore Smith. The caller said he wanted to talk to Board about dropping the charges and

mentioned that he was a barber. Board did not testify that he recognized the caller's voice. He did testify that he never knew anyone named Theodore Smith except the appellant; that the call was received a few days before trial; and that defense counsel, at the preliminary hearing, indicated the appellant was a barber. The substance of the telephone conversations was admitted over defense counsel's objections.

The appellant contends that the conversations were inadmissible because Board did not recognize the caller's voice. The state argues that no foundation was necessary to introduce this testimony since the appellant did not deny making the calls and "[i]t is highly improbable that there existed another barber named Theodore Smith, who was charged with the crime of aggravated robbery against a victim named Melton Board, whose trial was scheduled four days after the phone call."

The appellant has presented a significant issue for our review since the law in Ohio regarding the foundational requirements for the introduction of telephone conversations in criminal cases is not settled. However, neither party has cited any authority to support its argument. Proper briefing of assignments of error is necessary to preserve both the adversary system and judicial efficiency. We remind counsel of their duty to assist the court in the determination of this issue.[1]

A telephone conversation must be authenticated before the contents of that conversation are admissible. Many jurisdictions have permitted the admission of telephone conversations in criminal cases where the witness recognizes the voice of the person with whom the witness spoke and there is a reasonable basis for the identification. See, *e.g.,* Fed. R. Evid. 901(b)(5); *United States* v. *Turner* (C.A.D.C., 1973), 485 F. 2d 976; *State* v. *Godinez* (1975), 111 Ariz. 397, 531 P. 2d 154; *State* v. *Marlar* (1972), 94 Idaho 803, 498 P. 2d 1276; Annotation, 79 A.L.R. 3d 79, 135-154. In the absence of voice recognition, many jurisdictions find that the telephone conversation is authenticated where circumstantial evidence sufficiently identifies the parties to the conversation. See, *e.g., United States* v.

---

[1] We would be justified in refusing to address this issue because it is not briefed pursuant to App. R. 16. However, we choose to address the merits in the interest of justice and with full awareness that this issue may be presented at a new trial.

*John* (C.A. 7, 1975), 518 F. 2d 705; *State* v. *Williamson* (1972), 210 Kan. 501, 502 P. 2d 777; McCormick on Evidence (2d Ed., 1972), 553, Section 226; Annotation, 79 A.L.R. 3d 79, 154-159. If the prerequisites of admissibility are met, the identity of the speaker ultimately is a jury question. *State* v. *Williamson, supra;* McCormick on Evidence, *supra,* page 555, Section 227.

Ohio courts have adopted a liberal approach in admitting telephone conversations in civil cases. Telephone conversations are admitted where the identity of the parties is "satisfactorily established"; and, it is a question for the jury whether or not the identity is established with reasonable certainty. *Leonard* v. *Mowbray* (1926), 21 Ohio App. 268; see *Bedford Heights* v. *Tallarico* (1971), 25 Ohio St. 2d 211. In Ohio criminal cases, voice recognition is sufficient to establish the identity of the caller. See *Bedford Heights* v. *Tallarico, supra.* The evidentiary prerequisites for the admission of these conversations in criminal cases where the caller is not recognized by the witness, however, has not been defined in Ohio. The broad rules governing the admission of this evidence in civil cases may not apply to the admission of telephone conversations involving the defendant in a criminal case. *Id.* The jury's consideration of a conversation without a reliable foundation identifying the caller is likely to prejudice the accused.

We reject the state's contention that no foundation was necessary to introduce evidence of the telephone conversation. We adopt the rule announced by a number of our sister states that direct and circumstantial evidence which reasonably identifies the defendant as a party to a telephone conversation establishes a sufficient foundation to admit evidence of the conversation in a criminal case.

Our inquiry, however, does not end here. We must determine whether the circumstances in the instant case reasonably identify the defendant as the caller. We find that the circumstances present in this case lack sufficient indicia that the caller was the defendant. The conversation did not relate to matters uniquely within the knowledge of the defendant, nor was the identity of the caller corroborated by independent facts. Anyone with the slightest knowledge of the accused could have placed the call.

In *Lesnick* v. *State* (1934), 48 Ohio App. 517, this court held that the name given by a caller was sufficient evidence of

identity to present a jury question on the issue of identity. Today we reconsider our holding in that case in light of *Bedford Heights* v. *Tallarico, supra*, and the case law in other jurisdictions. See, *e.g., State* v. *Marlar, supra; State* v. *Williamson, supra;* Annotation, 79 A.L.R. 3d 79, 159-164. We hold that in a criminal case the mere statement of a person calling a victim on the telephone identifying himself as the defendant is insufficient evidence to establish the caller's identity as the defendant. Consequently, the evidence of the telephone conversation in the instant cause was improperly admitted.

The first assignment of error is well taken.

*"Assignment of Error Number III*

"The trial court erred in not granting a mistrial following testimony of a state's witness wherein testimony indicated that defendant-appellant did not make a statement to police officials at the time of arrest."

While examining one of the investigating police officers, the prosecutor elicited testimony that the officer spoke to all four people arrested in the case, read each of them their rights and, of the four people arrested, only Ellington made a statement.[2] The appellant contends that this testimony was an implicit comment on the appellant's right to remain silent.

---

[2] The following direct examination took place:

"Q. Did you give each individual their rights?

"A. Right, they were all afforded their rights under the Constitution.

"Q. What did you tell them their rights were at that time?

"A. Well, their rights were—

"Mr. Shaughnessy: Objection to 'them', your Honor.

We have one defendant here.

"The Court: Sustained.

"Q. Did you give the Defendant seated in the courtroom—by the way, which Defendant is in the courtroom today?

"A. I see the man that I knew at the time as being Theodore Smith [the appellant].

"Q. Did you talk to him?

"A. Yes, I did.

"Q. Did you give him his rights?

"A. Yes, I did.

"Q. What rights did you give him?

"Mr. Shaughnessy: Objection, your Honor. It has no relevancy.

"The Court: Overruled.

"A. Well, Mr. Smith was brought to the statement unit, at which time he read a plaque on the wall which itemizes his rights under the Constitution. And he was told he had the right to remain silent; that anything he said could be used against him. He had a right to an attorney. It was explained that if he couldn't afford one, that the County

With certain limited exceptions, which are not applicable here, the defendant's refusal to give a statement to the police is inadmissible evidence. See *Miranda* v. *Arizona* (1966), 384 U. S. 436; *Doyle* v. *Ohio* (1976), 426 U. S. 610; *United States* v. *Wycoff* (C.A. 9, 1976), 545 F. 2d 679, certiorari denied (1977), 429 U. S. 1105; *United States* v. *Johnson* (C.A. 5, 1977), 558 F. 2d 1225; *United States* v. *Edwards* (C.A. 5, 1978), 576 F. 2d 1152; *United States* v. *Two Bulls* (C.A. 8, 1978), 577 F. 2d 63, certiorari denied (1978), 58 L. Ed. 2d 326. Post-arrest silence is inherently ambiguous since the silence may reflect only the defendant's exercise of his constitutional right to remain silent. *Doyle* v. *Ohio, supra.* Any comment which infers that the defendant is guilty because he remained silent subverts the guarantees afforded him by the Fifth Amendment to the Constitution of the United States. *Id.*

In the instant case, the prosecutor did not ask directly whether the appellant had made a statement to the police. But this does not lessen the impact of his line of questioning. The clear implication of the testimony was that the appellant did not make a statement to the police. An indirect comment on the accused's silence can be as devastating as a direct comment on his failure to speak. Prosecutors should avoid any suggestion that the accused is guilty because he refused to give a statement to police.[3]

---

would get him one. The court system would provide him one. Then he was also asked if he understood his rights and he so said he did.

"Q. Now, did you talk to all four people that were arrested in connection with this offense?

"A. Yes, I did.

"Q. Did any of them give you a statement?

"A. Yes, Mr. Ellington did.

"Mr. Shaughnessy: Objection."

[3] We join in the sentiments expressed by the Ninth Circuit in *United States* v. *Wycoff* (C.A. 9, 1976), 545 F. 2d 679, at page 682, certiorari denied (1977), 429 U. S. 1105:

"This panel is concerned and alarmed about the increasing attempts by government counsel in this Circuit to make reference to or elicit testimony regarding an accused's silence at the time of arrest. Government counsel are on the verge of the precipice and jeopardizing solid cases by such practice. The often-repeated words of Mr. Justice Sutherland, in *Berger* v. *United States,* 295 U. S. 78, 55 S. Ct. 629, 79 L. Ed. 1314 (1935), again bear repeating:

" 'The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compel-

A review of this case indicates the prosecutor's questioning was more than an inadvertent suggestion that the accused did not give a statement to police. When this questioning took place, Ellington had already testified that he made a statement to police upon arrest. The gist of the police officer's testimony was that of the four people arrested, *only* Ellington made a statement. Of the three men arrested, only two could have victimized Melton Board. The logical inference was that Ellington was the innocent passenger because Ellington made a statement and the appellant, as well as the others, did not. The contrast between Ellington and the appellant was amplified when the appellant testified and presented an alibi defense which conflicted with Ellington's testimony. These circumstances lead us to the conclusion that the foregoing testimony elicited by the state was an impermissible comment on the accused's right to remain silent.

The third assignment of error is well taken.

*"Assignment of Error Number II*

"The trial court erred in not granting a mistrial in instances wherein the prosecuting attorney in the presence of the jury attempted to introduce into evidence witness' statements which are clearly not admissible."

At trial, defense counsel cross-examined Melton Board and Christopher Ellington regarding prior out-of-court statements each had made. The exhibits were marked for identification but defense counsel did not seek to introduce those statements. During the cross-examination of Board by the defense, the prosecutor requested, in the presence of the jury, that Board's statement be introduced as evidence; and, during the cross-examination of Ellington by defense counsel, the

---

ling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.' 295 U. S. at 88, 55 S. Ct. at 633.

"In future cases government counsel must scrupulously avoid all reference to or use of an accused's assertion of his right to remain silent or his right to counsel to except where permitted by established rules of law. The conduct here, though we cannot know that it was maliciously deliberate, was reprehensible nevertheless."

prosecutor stated, in the presence of the jury, that defense counsel was deceiving and misleading the jury by examining on the statement without intending to introduce it.[4] Furthermore, in closing argument, the prosecutor commented that the state wanted to introduce the statements to the jury but the judge prohibited it.[5]

The prosecutor defends his conduct by asserting it was necessary to dissuade the jury from believing a false impression given by defense counsel that there were material inconsistencies between the written statements and the testimony. There is no justification for this conduct. If defense counsel was misusing a prior recorded statement, it was the function of the judge, and not the prosecutor, to inform the jury. It is beyond the bounds of propriety to comment in front of the jury that opposing counsel is misleading or deceiving the jury; and, it is improper for counsel to refer to matters in closing argument which have been excluded by the court. See *Burns* v. *State* (1907), 75 Ohio St. 407.

Although we are not prepared to say that this conduct in and of itself constitutes grounds for a mistrial, we find that

---

[4] The prosecutor made the following statements:

"Mr. Marino: Your Honor, excuse me. It is misleading to do something like that, because Mr. Shaughnessy knows that it is inadmissible. Now, we don't mind having it in, not at all. That is why I would like to list it as a Joint Exhibit.

"* * * *

"Mr. Marino: But it is improper to deceive the jury into thinking that they are going to get it, when they are not."

[5] The following statements were made in closing argument:

"Mr. Marino: I told you, and I maybe blurted it out and maybe improperly so, but the use of those documents, and then to keep them out of evidence; to try to make you think that there is something in them that would hurt the State, is improper. There is nothing in that file that the State is afraid of.

"Mr. Shaughnessy: Objection.

"Mr. Marino: We live by the same rules of evidence as anyone else in the case. We recognize those rules. The Judge properly acted. He kept those documents out.

"But don't go into the deliberating room and sit down and ask yourselves why didn't we get those documents? Because it was not because the State kept them from you.

"Mr. Shaughnessy: Objection, your Honor. It wasn't because we kept them out either. It was because the Court kept them out. I will ask you to instruct the jury on that.

"Mr. Marino: Certainly, the State did not object to them."

this conduct, joined with the preceding assignments of error, operated to prejudice the appellant's right to a fair trial.

*"Assignment of Error Number IV*

"The verdict of the jury was against the manifest weight of the evidence and the court erred in not granting defendant-appellant's motion for acquittal."

There was substantial credible evidence from which reasonable minds could have concluded that the appellant was guilty of aggravated robbery. The victim identified the appellant as his assailant at trial, a line-up and a preliminary hearing. He was found in the victim's automobile a few hours after the crime occurred with a gun near his feet; and, Ellington placed him in the stolen automobile shortly after the crime was committed until the appellant was arrested. The weight to be given this evidence and the credibility of these witnesses were determinations for the trier of facts. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230. The verdict was not against the manifest weight of the evidence.

The fourth assignment of error is overruled.

*Judgment reversed*
*and cause remanded.*

CORRIGAN, C. J., and KRENZLER, J., concur.