OPINION
Appellant, Keith Bowles, appeals from the judgment of the Lake CountyCourt of Common Pleas, convicting him of murder, in violation of R.C.2903.02(B).
On the evening of August 22, 1998, appellant and three of his friends, Richard Hayden, a.k.a. "Snoop," Damon Anderson, a.k.a. "Long," and Jamal Russell, a.k.a., "Dred," drove from Cleveland to see a rap music group perform at Hellbusters, a bar in Fairport Harbor, Ohio. Appellant and his friends left the bar at 2:30 a.m., and drove to Painesville to attend an after-hours party at the Argonne Arms Apartment complex. On their way to the party, they drove past a bar named Nino's located on Prospect Street in Painesville. Outside Nino's, Hayden saw his cousin, Marcus Moore, a.k.a. "Choc," who appeared to be injured, yelling at police officers. When appellant and his friends drove past the bar again to look for Moore, he was gone. The group proceeded to drive up Prospect Street, where they saw Moore and some of their other friends from Cleveland. Appellant, Hayden, Long, and Russell learned that Moore and the others had been jumped and beaten up by a group of guys from Painesville, Antonio Rymmer, a.k.a. "Stickman," and his friends.
Appellant, Hayden, Long, and Russell then decided to drive to the Argonne Arms Apartment complex to find Rymmer and beat him up in revenge for jumping their friends. When they arrived at the apartment complex, they found Rymmer, but because he was holding a gun, they drove past him. As they were driving through the complex, they also saw another man, later identified as Kenneth Johnson, a.k.a. "Dirty," holding a rifle and talking to Long's brother, Delmarcus, a.k.a. "Peanut." They next encountered Ollie Gipson, a.k.a. "Nato" or "Trenne," whom they did not know. At that point, appellant, Hayden, and Long got out of the car and started to beat Gipson by punching, kicking, and stomping on him. Gipson died as a result of the injuries he sustained in the attack.
On September 4, 1998, the Lake County Grand Jury indicted appellant on one count of murder, in violation of R.C. 2903.02(B), for causing a death as a proximate result of committing felonious assault, in violation of R.C. 2903.11. A jury trial commenced on March 1, 1999. After the state presented its case, appellant moved for acquittal pursuant to Crim.R. 29, which was denied by the trial court. Appellant reasserted his motion for acquittal at the close of the presentation of evidence, which was again denied by the trial court. On March 3, 1999, the jury returned a verdict of guilty to the charge of murder. The trial court sentenced appellant to serve an indefinite term of imprisonment of fifteen years to life. On March 9, 1999, appellant filed a motion for judgment of acquittal, or in the alternative, a motion for a new trial. On April 14, 1999, the trial court denied appellant's motion. From his judgment of conviction, appellant assigns the following errors:
 "[1.] Defendant was denied a fair and impartial trial jury venire.
 "[2.] Defendant was denied due process of law when the court called Richard T. Hayden as a court's witness.
 "[3.] Defendant was denied due process of law and a fair trial when the court permitted questioning of defendant and commented on the fact defendant did not make a statement to the police.
 "[4.] Defendant was denied a fair trial when the court permitted evidence to be offered concerning efforts made to contact defendant.
 "[5.] Defendant was denied a fair trial when the prosecutor elicited from Richard T. Hayden that he had been convicted of murder.
 "[6.] Defendant was denied due process of law when the court refused to instruct on the lesser included offense of assault.
 "[7.] Defendant was denied due process of law when the court improperly informed the jury concerning a presumption of aiding and abetting.
 "[8.] Defendant was denied due process of law and a fair trial when the court instructed the jury that an `accomplice' had testified.
 "[9.] Defendant was denied due process of law when the court would not instruct on a culpable mental state.
 "[10.] Defendant was denied due process of law when the court instructed on flight.
 "[11.] Defendant was denied a fair trial by reason of improper prosecutorial argument.
 "[12.] Defendant was denied due process of law when the court overruled defendant's motion to dismiss.
 "[13.] Defendant was denied due process of law when the court overruled defendant's motion for judgment of acquittal."
I.
 In his first assignment of error, appellant alleges that he was denied a fair and impartial trial jury venire. Appellant contends that because the jury venire and panel contained no African-American jurors, he was denied his Sixth Amendment right to have a jury comprised of a fair cross-section of the community. Appellant further contends that the jury was not impartial because the jurors were exposed to pre-trial publicity. Appellant also asserts that Juror White should have been excused for cause pursuant to Crim.R. 24(B)(10) because he was the brother of the Painesville Chief of Police, who was not the complainant.
In State v. Fulton (1991), 57 Ohio St.3d 120, paragraph two of the syllabus, the Supreme Court of Ohio held that:
 "In order to establish a violation of the fair representative cross-section of the community requirement for a petit jury array under the Sixth and Fourteenth Amendments to the United States Constitution, a defendant must prove: (1) that the group alleged to be excluded is a `distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury- selection process."
 In the instant case, appellant has not demonstrated that the representation of African-Americans in jury venires is not fair and reasonable in relation to the number of such persons in Lake County. Furthermore, appellant has not presented any evidence from which we can infer that the number of African-Americans included in jury venires in Lake County is due to systematic exclusion of this racial group in the jury selection process. Therefore, we cannot conclude that appellant's Sixth Amendment right to have a jury comprised of a fair cross-section of the community was violated.
Appellant argues that the publicity generated by the trial of Michael Love tainted the entire jury venire; however, mere exposure to pre-trial publicity does not necessarily taint a jury venire. Prospective jurors who are merely aware of some of the publicized circumstances of a crime but have not previously formed or expressed opinions with respect to the defendant's guilt are not subject to challenges for cause during voir when the trial court is satisfied from their examination that they can be impartial. State v. Duerr (1982), 8 Ohio App.3d 404, paragraph two of the syllabus.In the instant case, a review of voir dire reveals that none of the jurors at appellant's trial indicated that they had formed an opinion as to appellant's guilt prior to the commencement of the trial. We cannot conclude that appellant was denied a fair and impartial jury due to the jurors' exposure to pre-trial publicity.
Appellant also argues that Juror White should have been excused for cause pursuant to Crim.R. 24(B)(10) because he is the brother of the Painesville Chief of Police. Crim.R. 24 provides in part:
 "(B) A person called as a juror may be challenged for the following causes:
 "(10) That he is related by consanguinity or affinity within the fifth degree to the person alleged to be injured or attempted to be injured by the offense charged, or to the person on whose complaint the prosecution was instituted; or to the defendant."
 Because Juror White is not related to either Ollie Gipson, the victim of crime for which appellant was charged, or appellant himself, Crim.R. 24(B)(10) does not apply to him. Appellant's first assignment of error has no merit.
In his second assignment of error, appellant alleges that he was denied due process of law when the trial court called Richard Hayden as its own witness. Appellant contends that the trial court had no grounds for calling Hayden as a court's witness because there was no indication that Hayden would recant, become hostile, or refuse to testify at appellant's trial.
Evid.R. 614(A) governs the calling of witnesses by the court; it provides that "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." We will not reverse a trial court's decision to call a witness as its own in the absence of an abuse of discretion.State v. Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144, at paragraph four of the syllabus. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." State v.Apanovitch (1987), 33 Ohio St.3d 19, 22.
Contrary to appellant's contention, we have held that a trial court does not abuse its discretion under Evid.R. 614(A) by not requiring a prior showing of inconsistent testimony. State v. Davis (Dec. 10, 1993), Lake App. No. 92-L-089, unreported. In Davis, we explained:
 "Determining the witness is varying materially from prior statements before calling her as a court's witness for impeachment purposes generally may be the most prudent course of action. However, Evid.R. 614(A) does not state such a requirement. This procedure is not necessary where the trial judge is reasonably justified in believing that the calling of the person as a court witness would benefit the jury in performing its fact- finding responsibilities." [Citations omitted].
 In the instant case, we cannot conclude that the trial court abused its discretion by calling Hayden as a court's witness. The prosecutor informed the trial court that counsel for Hayden had indicated that Hayden would not cooperate with the prosecution. Hayden's testimony at trial affirms the prosecution's assessment that Hayden would not have cooperated with the state. During its cross-examination of Hayden, the state presented evidence that Hayden had written a letter to Damon Anderson telling him that he would try to help him and appellant during their trials. The trial court was reasonably justified in believing that calling Hayden, who had previously been convicted of murder for his participation in the attack on Ollie Gipson, as a court's witness would benefit the jury in performing it fact-finding responsibilities. Appellant's second assignment of error has no merit.
III. and IV.
Because appellant's third and fourth assignments of error are interrelated, they will be addressed together. In his third assignment of error, appellant alleges that he was denied due process of law because the trial court permitted the state to question him about his failure to make a statement to the police. In his fourth assignment of error, appellant alleges that he was denied a fair trial because the trial court permitted the state to present evidence regarding efforts made by the police to contact him. Appellant contends that permitting him to be questioned about his failure to go to the police to make a statement violated his constitutional right to remain silent. Appellant further contends that permitting the state to present evidence of the police's efforts to contact him deprived him of a fair trial because even if he were contacted by the police, he had the constitutional right to refuse to make a statement.
Case law cited by appellant does not support his contentions. Appellant relies on State v. Sabbah
(1982), 13 Ohio App.3d 124, 468 N.E.2d 718, and Statev. Williams (1979), 64 Ohio App.2d 271, 413 N.E.2d 1212, which both stand for the proposition that a defendant may not be impeached on cross-examination with evidence of his post- arrest silence. In the instant case, the prosecution did not attempt to impeach appellant by claiming that he failed to make a statement to the police after he was arrested. Rather, the prosecution presented evidence that appellant did not come forward to make a statement to the police until nearly two months after the incident, even though he was aware that the police were looking for him. The evidence elicited by the state was permissible because it was relevant to prove that appellant was attempting to evade the police. Appellant's third and fourth assignments of error have no merit.
In the fifth assignment of error, appellant contends that he was denied a fair trial when the state elicited from court witness Richard Hayden that he had been convicted of murdering the victim in this case. Appellant maintains that this left the jury with the obvious inference that because Hayden had been convicted of murder and that he, the defendant, was being prosecuted as an aider and abettor of Hayden, that he must be guilty.
A review of the trial transcript reveals that during the initial cross-examination of Hayden by the state, there was no reference made to prior convictions. However, upon cross-examination by appellant's counsel, the following exchange occurred:
 "Q. Have you ever been convicted of any felony offenses in the last ten years?
"A. Yes.
"Q. What are they?
"A. Drug trafficking charge.
"Q. Drug trafficking?
"A. Yes."
 No mention was made of Hayden's murder conviction. Thus, appellant's counsel had opened the door. Upon re-cross-examination by the state, Hayden was then questioned about a felony conviction that he had failed to mention, that being his murder conviction. This was permissible, either under Evid.R. 609 which allows for impeachment of witnesses, other than the accused, with prior convictions, or under the "invited error" rule. It is well established that "[a] party cannot take advantage of an error he invited or induced." State v. Seiber (1990), 56 Ohio St.3d 4, 17. Accordingly, appellant's fifth assignment of error is without merit.
In the sixth assignment of error, appellant asserts that he was denied due process of law when the trial court refused to instruct the jury on the lesser included offense of assault. Appellant bases his argument on his contention that assault is a lesser included offense of murder and that while he admittedly kicked the victim, it was not the mere act of kicking that killed the victim.
Appellant's argument overlooks the fact that he was charged and convicted of felony-murder pursuant to R.C. 2903.02(B). Under that statute, the state had to prove that appellant caused "the death of another as a proximate result of [his] committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." In this case, the underlying felony was felonious assault. The theory of the case was that appellant participated in the beating administered to the victim. He aided and abetted Richard Hayden, the principal offender. Pursuant to R.C. 2923.03, a person who knowingly aids, helps, assists or encourages another in the commission of a crime is regarded as if he was the principal offender and is just as guilty as if he personally performed every act constituting the offense.
Thus, it is clear that whether or not appellant physically administered the actual blow that caused the victim's death is irrelevant. Appellant was not tried as the principal but, rather, as an accomplice. Under these circumstances, it would have been improper to instruct the jury on the lesser included offense of assault. Appellant's sixth assignment of error is without merit.
In the seventh assignment of error, appellant submits that he was denied due process of law when the trial court improperly instructed the jury regarding a presumption of aiding and abetting. Specifically, appellant cites to the following sentence in the jury charge:
 "Thus, participation in criminal intent may be inferred from the presence, companionship and conduct before and after the offense is committed."
 To begin with, when reviewing a trial court's jury instructions, an appellate court must examine the entire jury charge. Snyder v. Stanford (1968), 15 Ohio St.2d 31, paragraph three of the syllabus, citing State v. Porter (1968), 14 Ohio St.2d 10, 13. One sentence or one phrase should not be looked at in isolation. Id. Appellant fails to acknowledge that the trial court also instructed the jury that "mere presence is not enough to make [appellant] an accomplice * * *." When the entire jury instruction is considered, it is clear that there was no error in this regard. The language used by the trial court has previously been upheld by numerous Ohio courts, including this one. State v. Davis (Apr. 24, 1998), Lake App. No. 96-L-167, unreported, at 10, quoting State v. Pruett (1971), 28 Ohio App.2d 29, 34.
Based upon the foregoing analysis, the trial court did not err in its instruction to the jury regarding aiding and abetting. Appellant's seventh assignment of error is without merit.
 VIII.
In the eighth assignment of error, appellant claims that he was denied due process of law by the trial court's instruction to the jury that an accomplice had testified. Specifically, appellant objected to the trial court's statement: "[n]ow we had an accomplice testify in this case." Appellant argues that this was an unconstitutional comment on the evidence because whether or not Richard Hayden was an accomplice was a question of fact for the jury to decide.
However, contrary to appellant's assertion, the trial court was required to comment on the accomplice's testimony. R.C. 2923.03(D) provides:
 "If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
 "`The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 "`It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.'"
 Based upon this statute, the statement that appellant objected to was proper. The omission of the adjective, alleged, if error, is harmless. Appellant's eighth assignment of error is without merit.
 IX.
In the ninth assignment of error, appellant contends that he was denied due process of law by the trial court's failure to instruct the jury on a culpable mental state. Specifically, appellant's counsel requested that the jury be instructed that causing the death of another must be done knowingly. Thus, appellant argues, he was held strictly liable for the offense without the necessity of proving a culpable mental state. We disagree.
Appellant was being prosecuted for a felony-murder conviction pursuant to R.C. 2903.02(B). Under that statute, the state had the burden of proving that appellant caused "the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." The underlying felony was felonious assault. For a conviction of felonious assault, the state was required to prove that appellant knowingly caused serious physical harm to another. R.C. 2903.11(A)(1). The jury was so instructed.
Thus, in the present case, in order to secure a conviction under the felony-murder statute, the state had only to show that appellant knowingly caused serious physical harm to the victim which proximately resulted in the victim's death. Thus, the trial court's jury instruction was proper since the trial court did instruct the jury on mens rea for felonious assault. The state did not have to prove that appellant knowingly caused the death of the victim. Appellant's ninth assignment of error is without merit.
 X.
In the tenth assignment of error, appellant maintains that he was denied due process of law when the trial court instructed the jury on flight. It is his contention that the flight instruction was improper because he did not flee the scene voluntarily but, instead, was a mere passenger in the vehicle and had been instructed to leave by an officer.
Appellant failed to object to the jury charge. Hence, to reverse on this ground we must find that the trial court committed plain and substantial error.
We have previously held that flight of a criminal defendant after the commission of a crime is circumstantial evidence of consciousness of guilt, and hence, the fact of guilt itself. State v. Norwood
(Sept. 30, 1997), Lake App. Nos. 96-L-089 and 96-L-090, unreported, at 4, 1997 WL 663423.
In the case sub judice, the appellant claimed he left the scene at the direction of police officers and was a passenger in the car. There was no evidence presented that appellant deliberately fled the area or was trying to avoid arrest or detection. Thus there is want of credible evidence from which the jury could conclude that appellant's after the fact conduct constituted flight within the meaning and import of that concept. The trial court's jury charge on flight, and its implications, is therefore error.
Upon an examination of the entire transcript, we conclude that the trial court's erroneous instruction to the jury on the issue of flight was harmless error beyond a reasonable doubt. Here there was overwhelming evidence of appellant's guilt.
 "Where constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt."
 State v. Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus.
Appellant's tenth assignment of error is without merit.
 XI.
In his eleventh assignment of error, appellant alleges that he was denied a fair trial due to improper prosecutorial argument. Appellant contends that several comments by the prosecutor constitute reversible error.
Prosecutorial misconduct does not constitute reversible error unless it prejudicially affects the substantial rights of the defendant. State v.Lott (1990), 51 Ohio St.3d 160, 166; 555 N.E.2d 293. After reviewing the prosecutorial comments of which appellant complains, we cannot conclude that any of them prejudicially affected the substantial right of appellant. The strength of the evidence against appellant and the trivial nature of the prosecutor's comments militate against a conclusion that appellant was prejudiced by any of the prosecutor's arguments. Therefore, appellant's eleventh assignment of error has no merit.
In his twelfth assignment of error, appellant alleges that the trial court erred by failing to dismiss the felony-murder charge because R.C.2903.02(B) is unconstitutional in that it violates his due process rights and violates the equal protection clause. Appellant contends that R.C.2903.02(B) violates due process because it impermissibly alleviates the State from having to prove any culpable mental state and more severely punishes an offender for conduct that would traditionally fall within the offense of involuntary manslaughter.
R.C. 2903.02(B) provides that:
 "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of Section 2903.03 or 2903.04 of the Revised Code."
 This court has previously determined that R.C. 2903.02(B) does not violate a defendant's due process rights. State v. Hayden (July 14, 2000), Lake App. No. 99-L-037, unreported. In Hayden, we explained that "* * * R.C. 2903.02(B) does not relieve the state of the burden of proving mens rea simply because the intent to kill is conclusively presumed so long as the state proves the required intent to commit the underlying felony." In the instant case, we cannot conclude that appellant's due process rights were violated because the State satisfied the mens rea for murder by proving that appellant aided and abetted in the felonious assault committed against Ollie Gipson.
Appellant also asserts that the felony-murder statute violates the equal protection clause because it creates two classes of individuals whom may be convicted of murder, one who must commit the act "purposely" and another who must only cause the death while committing or attempting to commit an offense of violence that is either a first or second degree felony.
Because no suspect class or fundamental right is involved, R.C.2903.02(B) does not violate the equal protection clause as long as the legislation bears a rational relationship to a legitimate governmental interest. Adamsky v. Buckeye Local School District (1995),73 Ohio St.3d 360, 362, 653 N.E.2d 212. As recognized by the Supreme Court of Ohio, "[p]romulgating laws to guard society's health and safety is among those legitimate police powers inherent in government." Statev. Cook (1998), 83 Ohio St.3d 404, 417. We conclude that R.C. 2903.02
does not violate the equal protection clause because the statute, which severely punishes offenders whose commission or attempted commission of first or second degree felonies of violence result in the death of their victims, bears a rational relationship to the government's legitimate interest of protecting the safety of its citizens. Appellant's twelfth assignment of error has no merit.
In his thirteenth assignment of error, appellant alleges that the trial court erred by denying appellant's motion for judgment of acquittal. Appellant contends that the felony murder statute should not have been applied to him because he was charged with an attempt to commit felonious assault, which is only a felony of the third degree, pursuant to R.C.2923.02(A), which provides that "[a]n attempt to commit any other offense is an offense of the next lesser degree than the offense attempted."
Appellant's contention that he could not be charged with R.C. 2903.02(B) has no merit. As previously stated, R.C. 2903.02 provides that:
 "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of Section 2903.03 or 2903.04 of the Revised Code." [Emphasis added].
 Under the plain language of the statute, an attempt to commit a felony of the second degree that proximately results in the death of another qualifies an offender for the offense of felony murder. Furthermore, appellant was convicted of aiding and abetting in a felonious assault that proximately resulted in the death of another; therefore, the charge of felony murder was applicable to appellant.
Appellant also argues that sentencing him to a term of imprisonment of fifteen years to life results in cruel and unusual punishment because appellant merely assaulted the victim and the prosecution elevated a first degree misdemeanor to a first degree felony. We cannot conclude that appellant's punishment was grossly disproportionate to the offense committed by appellant.
As previously stated, appellant was convicted of aiding and abetting in a felonious assault that proximately resulted in the death of another. That appellant claims that he merely assaulted the victim does not make him less culpable than the principal offender, whose conduct proximately caused the death of Ollie Gipson. See R.C. 2929.03(F).
Appellant also argues that his conviction was not supported by sufficient evidence. Appellant contends that the prosecution presented insufficient evidence to prove that he aided and abetted Hayen because he merely kicked Ollie Gipson in the stomach and was in the car when Hayden administered the fatal blows to Gipson.
The proper test for reviewing sufficiency is set forth in State v.Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 In the instant case, appellant's motion of acquittal was properly denied because the jury could have found that the essential elements of aiding and abetting in the offense of felony murder were proved beyond a reasonable doubt. The Revised Code of Ohio expressly permits that a defendant may be charged with a substantive crime as the principal offender and be convicted as an accomplice without amending the indictment.
R.C. 2923.03 provides:
 No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
* * *
(2) Aid or abet another in committing the offense;
* * *
Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.
 In Hill v. Perini (C.A. 6, 1986) 788 F.2d 406, 408, the Sixth Circuit Court of Appeals stated:
 "[U]nder Ohio law, the State may charge and try an aider and abettor as a principal, and if the evidence at trial reasonably indicates that the defendant was an aider and abettor rather than a principal offender, a jury instruction regarding complicity may be given."
 The State presented evidence that appellant aided and abetted Hayden in committing the felonious assault on Ollie Gipson. Richard Hayden testified that appellant threw the first punch at Gipson, which caused him to flinch forward and then Damon Anderson punched him twice. Barbara Adeyemi testified that appellant and Anderson continuously beat Gipson by stepping on him and kicking him while Hayden was stomping on his head.
Because the State presented evidence to prove that appellant assisted Hayden by participating in the beating of Gipson, the trial court did not err by denying appellant's motion for acquittal. Appellant's thirteenth assignment of error has no merit.
For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.
______________________________________ JUDGE JOHN R. MILLIGAN, Ret., Fifth Appellate District, sitting by assignment.
FORD, P.J., O'NEILL, J., concur.