OPINION
Defendant-appellant Devon Young appeals from his conviction and sentence for Felonious Assault, with a weapons specification. He contends that the trial court erred by permitting the State to call a rebuttal witness and by permitting the introduction of the identity of a prior felony conviction as having been for Attempted Murder. Young also claims that he was denied the effective assistance of counsel. Finally, he contends that his conviction is not supported by the evidence.
We conclude that the trial court did not err by permitting the State to call its rebuttal witness. However, we conclude that the trial court did err by permitting the introduction of the identity of Young's prior felony conviction. We further conclude that this error was prejudicial. Accordingly, we need not address the manifest weight and ineffective assistance of counsel arguments, since they are rendered moot.
The judgment of the trial court is Reversed, and this cause isRemanded for further proceedings.
 I
In January, 2001, Brian Whiteside and Dee Dee Howard were living together in Howard's home. On January 2, Dee Dee's brother, Devon Young, moved into her home with his fiancee and his son. On January 4, Young informed his sister of some negative comments he had overheard about Brian. Then, on January 5, Dee Dee and Brian broke up and Brian moved out of the house.
On the evening of January 5, Young visited Brittany's Pub II Bar. Brian was also at the bar. At some point, Brian exited the bar to make a call on his cell phone. Young followed him out to the parking lot. Outside, Young and Brian stood near Young's truck at the front of the club. Young, who began apologizing to Brian for the situation with Dee Dee, slipped and fell. Young claimed that Brian pushed him, but Brian assumed that Young, who was intoxicated, had slipped on ice or snow. At that point a woman came out of the bar to speak to Brian. Brian told the woman to go back in the bar. As he was turning back to face Young, Brian saw a flash of fire coming from a gun in Young's hand. He felt pain in his chest, and ran back into the club. Young admitted shooting Brian. However, he claimed that he did so in self-defense, having seen Brian holding what he believed was a knife or a gun.
After Brian ran back into the bar, Young drove away. He went back to Dee Dee's house. The next morning he went to Columbus. Approximately nine days later he returned to Dayton and turned himself in to the police. Young was arrested and indicted on one count of Felonious Assault with a firearm specification. Following a jury trial, Young was convicted as charged and sentenced accordingly. From his conviction and sentence, Young appeals.
 II
Young's First and Second Assignments of Error are as follows:
 THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO CALL A REBUTTAL WITNESS WHO [SIC] TESTIMONY SHOULD HAVE BEEN OFFERED IN THE STATE'S CASE-IN-CHIEF.
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT ALLOWED THE STATE TO PRESENT APPELLANT'S ALLEGED STATEMENTS WHICH LACKED NECESSARY FOUNDATION FOR RELIABILITY, AUTHENTICATION, AND VOICE IDENTIFICATION.
 Young contends that the trial court erred by permitting the State to call a rebuttal witness. In support, he argues that the evidence provided by the witness should have been introduced during the State's case-in-chief. He also claims that the trial court erred by permitting the witness to testify regarding statements made by Young over the telephone, because the State failed to authenticate the conversation.
During trial, Young testified in his case-in-chief that he was acting in self-defense when he shot Brian. He had told his sister that he thought Brian had a knife. However, at trial, he testified that he did not know what Brian held in his hand, but that he thought Brian was going to shoot him.
Following the conclusion of the defense case, the State called Anna Catlin as a rebuttal witness. Catlin, a friend of Dee Dee's, testified that after she learned that Brian had been shot, she called Dee Dee. She further testified that a man answered Dee Dee's phone. The man asked Catlin if she had been at the bar, and whether that "nigger" was dead. He also stated that the man had pulled a gun on him. When Catlin asked him what he was talking about, the man hung up the phone. Later, the same man left a message on Catlin's voice mail asking her to call him. He identified himself as Dee Dee's brother. Also, Catlin's caller ID noted that she had received several telephone calls from Dee Dee's number that day. The court permitted Catlin to testify as a rebuttal witness regarding these facts, over Young's objection.
Rebuttal evidence is given to explain, refute or disprove facts introduced into evidence by the adverse party. State v. McNeill (1998),83 Ohio St.3d 438, 446. It becomes relevant only to challenge the evidence offered by the opponent and its scope is limited by such evidence. Id. In this case, Young testified that he acted in self-defense; a claim that the State can appropriately rebut after it is made, rather than in its case-in-chief. Young testified that he only intended to scare Brian, not actually shoot him. However, by asking if the "nigger" was dead, rather than if Brian had actually been hit by a bullet, Young indicated he knew that he had hit Brian. Also, Catlin's testimony rebutted Young's testimony that he did not know if Brian had pulled out a gun or a knife. We conclude that Catlin's testimony was proper as rebuttal.
We next address the claim that the statements made over the telephone were not properly authenticated. Evidence Rule 901 governs authentication, is applicable to telephone calls, and provides a liberal standard for the authentication of telephone calls. State v. Vrona
(1988), 47 Ohio App.3d 145, 149. "Telephone conversations are admitted where the identity of the parties is `satisfactorily explained.'" Statev. Williams (1979), 64 Ohio App.2d 271, 274. "Testimony as to a telephone call is admissible where there is a reasonable showing, through testimony or other evidence, that the witness placed or received a call as alleged, plus some indication of the identity of the person spoken to. `There is no fixed identification requirement for all calls.' * * * `Each case has its own set of facts.'" State v. Vrona (1988),47 Ohio App.3d 145, 149, citations omitted. Circumstantial evidence, as well as direct, may be used to show authenticity. Williams, supra,64 Ohio App.2d 274. Moreover, the threshold standard for authenticating evidence pursuant to Evid.R. 901(A) is low, and "does not require conclusive proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that * * * [the evidence] is what its proponent claims it to be." State v. Easter (1991),75 Ohio App.3d 22, 25.
In this case, Catlin spoke to a man who answered the phone when she called Dee Dee's home. The record shows that at that time, Young was the only man residing there. Young admitted that he answered a phone call from a woman that day. Later the same day, Catlin spoke to a man whose voice she recognized as the one that answered Dee Dee's phone. This time the man identified himself as Dee Dee's brother. Catlin's caller ID indicated that she had received calls from Dee Dee's telephone that morning. Based upon the foregoing, we conclude that the trial court did not err in finding that the telephone conversation was properly authenticated.
A trial court has broad discretion in admitting evidence and in controlling the order of witnesses. State v. McGuire (1997),80 Ohio St.3d 390, 400-401. An appellate court must not interfere with its determination "[u]nless the trial court has clearly abused its discretion." State v. Apanovitch (1987), 33 Ohio St.3d 19, 25. "The term `abuse of discretion' * * * implies that the court's attitude is unreasonable, arbitrary, or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157. We cannot say that the trial court abused its discretion. Therefore, the First and Second Assignments of Error are overruled.
 III
Young's Third and Fourth Assignments of Error provide:
 THE TRIAL COURT ERRED WHEN IT ALLOWED THE INTRODUCTION OF APPELLANT'S PRIOR FELONY CONVICTION FOR ATTEMPTED AGGRAVATED MURDER WHEN THE SAME WAS CLEARLY MORE PREJUDICIAL THAN PROBATIVE AND THAT THE BASIS FOR THE INTRODUCTION WAS TO SHOW APPELLANT'S BAD CHARACTER.
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT ALLOWED THE INTRODUCTION OF APPELLANT'S PRIOR FELONY CONVICTION BECAUSE SUCH CONVICTION WAS UNDULY PREJUDICIAL AND FORCED THE DEFENDANT TO EITHER TESTIFY AND BE TAINTED OR NOT TESTIFY AT ALL, SEVERELY PREJUDICING HIS ABILITY TO DEFEND HIMSELF.
 In his argument in support of these assignment of errors, Young acknowledges that once he had testified in the case, the State could properly elicit from him that he had previously been convicted of a felony, but Young contends that it was unduly prejudicial, in his trial for having shot someone, to allow the State to inform the jury that his previous felony conviction was for Attempted Murder. Although the State does not raise the issue, we must consider, as a threshold matter, whether Young waived any objection along these lines when his own counsel established the name of the prior offense in Young's direct examination.
Young filed a motion in limine to prevent the introduction in evidence of the name and nature of his prior felony conviction at trial. During trial, he renewed his objection prior to presenting his own testimony. In response, the State claimed that the evidence was proper for impeachment, and also to show that Young was not to have a firearm, and that he knew he was not supposed to have one. The trial court then indicated that it would allow the State to introduce the evidence based upon the State's reasoning. Young's counsel then indicated that he would be forced to raise the matter himself during his direct examination in order to avoid the appearance that he was trying to hide information from the jury. The trial court noted Young's objection. On direct examination, Young admitted that he had previously been convicted of Attempted Murder.
In State v. Sain (Oct. 10, 1991), Montgomery App. No. 12095, unreported, we held that, in this situation, a criminal defendant does not waive the right to object to evidence merely because he presents the objectionable evidence during his own direct examination, noting that "it is common practice for the defendant to concede a prior felony record upon direct examination to diminish its impact upon cross-examination." We approve and follow our holding in State v. Sain, supra. From the record in the case before us, we conclude that Young did everything he reasonably could to preserve for appellate review the issue concerning the prejudicial nature of the identity of his prior offense.
Evid.R. 609(A) provides that for purposes of impeaching credibility, evidence that the accused has been convicted of a crime is admissible if the crime was punishable by imprisonment in excess of one year, and if the probative value of the evidence is not outweighed by the risk of unfair prejudice. A trial court has broad discretion in determining the extent to which the evidence will be admitted. State v. Wright (1990),48 Ohio St.3d 5, syllabus. However, it should consider the following factors in applying the rule: (1) the nature of the previous crime; (2) the recency of the prior conviction; (3) the similarity between the crime charged and the crime for which the defendant was previously convicted; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. 1 McCormick § 94, n. 9 (3ed. 1984).
In considering these factors, we note that although the issue of credibility in this case was a central issue — Young testified that he acted in self-defense while Brian testified that he did nothing to antagonize Young — the remaining factors weigh against admissibility.
The prior conviction was for Attempted Murder. This is a crime of violence with less bearing on Young's character for truthfulness than a prior conviction for a covert sort of offense, like theft.
The prior conviction occurred in 1983. Because Young's parole for that conviction terminated in 1992 the conviction falls, barely, within the time limits of Evid.R. 609(B). Nevertheless, seventeen years passed between the date of the prior crime and the probative value of that evidence is accordingly diminished.
In this case, Young was charged with Felonious Assault for having nearly killed Brian. The prior conviction was for Attempted Murder. The two crimes, are therefore, similar enough that a jury would be more likely to use the prior conviction in support of the forbidden inference that "he did it once, therefore he must have done it again," rather than as evidence of Young's untruthful character.
Additionally, the need for Young's testimony was great, since he was the only person who could provide evidence of his claim of self-defense.
Although the State claimed that the prior conviction could be used to impeach Young's credibility it also argued that the conviction could be used to show that Young should have known that it was unlawful to carry a gun. However, Young was not charged with having a weapon under a disability. Therefore, it appears that the introduction of the evidence for this purpose would also be in support of the forbidden inference that Young had the propensity to commit an offense, rather than for the purpose of impeaching his character for truthfulness.
The State cites State v. Wright, supra, in which this court was reversed. We had held in that case that the trial court had discretion to determine that although the State could impeach the defendant with his prior felony convictions, it would not be allowed to establish the identity of those prior felony convictions as having been for Gross Sexual Imposition. The defendant in that case was charged with four counts of Rape, and one of Kidnapping. In reversing us, the Supreme Court noted that the defendant in that case had not merely testified, but had put his general character in issue, having called his employer as a character witness. Id., at 7-8. In the case presently before us, Young never put his general character in issue. In our view, this is a critical distinction. If a defendant puts his general character in issue, it should be fair game for the State to present evidence of the nature of his past transgressions, as tending to show the defendant's bad character.
Similarly, our decision in State v. Sain, supra, upholding the admission of the identity of the defendant's prior convictions as having been for Robbery, is distinguishable because the defendant in that case, while testifying, claimed that he had only been arrested for minor offenses, and was the victim of police harassment. Introduction of the Robbery convictions was proper to rebut the defendant's characterization of his criminal past.
In summary, we conclude that the probative value of the identity of Young's prior felony conviction as having been for Attempted Murder is substantially outweighed by its prejudicial value. Therefore, Young's Third and Fourth Assignments of Error are sustained.
 IV
Young's Fifth and Sixth Assignments of Error state as follows:
 APPELLANT SUBMITS THAT HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AND AS A RESULT OF THE SPECIFIC ACTS AND OMISSIONS OF HIS TRIAL COUNSEL THAT THE TRIAL RESULT IS CLEARLY UNRELIABLE.
 APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Young contends that his conviction must be overturned because he was denied the effective assistance of counsel and because his conviction is against the weight of the evidence.
We decline to address these alleged errors, since they have been rendered moot by our disposition of Young's Third and Fourth Assignments of Error, in Part III, above. Therefore, Young's Fifth and Sixth Assignments of Error are overruled as moot.
 V
Young's First and Second Assignments of Error having been overruled, his Third and Fourth Assignments of Error having been sustained, and his Fifth and Sixth Assignments of Error having been overruled as moot, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings in accordance with this opinion.
BROGAN and YOUNG, JJ., concur.