OPINION *Page 2 
{¶ 1} Defendant-appellant, Jesse Lightner (hereinafter "Lightner"), appeals the Hardin County Court of Common Pleas judgment of conviction and imposition of sentence following a jury verdict of guilty on one count of receiving stolen property and one count of engaging in a pattern of corrupt activity. For the reasons that follow, we reverse in part and affirm in part.
 {¶ 2} These charges stem from events surrounding the theft of three all-terrain vehicles ("ATVs") between March 2, 2007 and March 21, 2007. On March 2, 2007, Mrs. Holland came home after working a third shift and noticed her son's ATV was out by the road. (May 27, 2008 Tr. at 106, 117). When she went to check on the other ATVs in their barn, she discovered that one of their five ATVs was missing. (Id.). A few days later, on March 11, 2007, Jason Hennon discovered that one of his ATVs had been stolen. (Id. at 94). Neither victim knew the identity of the person(s) who had stolen their ATVs. (Id. at 96-98, 109).
 {¶ 3} Then, on March 21, 2007, a detective from the Hardin County Sheriff's Office received information that there were stolen ATVs at Ben Fowler's residence. (Id. at 180-81). After obtaining consent from Fowler to conduct a search of the buildings on the premises, the detectives uncovered three ATVs that had been concealed with boxes, bicycles, and other items. (Id. at 183-84). Two of the ATVs' serial numbers matched the two serial numbers of the ATVs that had been stolen from the Hennon and Holland residences; however, the third ATV, *Page 3 
which was never claimed by anyone, did not match any of the reported stolen ATVs on the database. (Id. at 185-87).
 {¶ 4} Ben Fowler was convicted of three counts of receiving stolen property, and the State filed charges against Lightner. Lighter was indicted on March 11, 2008 on fifteen counts: two counts of Theft in violation of R.C. 2913.02(A)(1), felonies of the fifth degree; five counts of Receiving Stolen Property in violation of R.C. 2913.51(A), all felonies of the fifth degree; three counts of Grand Theft of a Motor Vehicle in violation of R.C. 2913.02(A)(1), (B)(5), all felonies of the fourth degree; one count of Tampering with Evidence in violation of R.C. 2921.13(A)(1), a felony of the third degree; one count of Breaking and Entering in violation of R.C. 2911.13(A), a felony of the fifth degree; one count of Intimidation of an Attorney, Victim, or Witness in violation of R.C. 2921.04(B), a felony of the third degree; one count of Receiving Stolen Property/Firearm in violation of R.C. 2913.51(A), (C), a felony of the fourth degree; and one count of Engaging in a Pattern of Corrupt Activity in violation of R.C. 2923.32(A)(1), (B)(1), a felony of the first degree.
 {¶ 5} On April 1, 2008, Lightner entered pleas of not guilty on all fifteen counts. A jury trial was held on May 27, 2008, and prior to the trial, count twelve was dismissed upon the State's motion. After the State's case-in-chief, defense counsel moved for a judgment of acquittal pursuant to Crim. R. 29. The trial court *Page 4 
granted Lightner's motion for acquittal as to counts one, four, five, seven, eight, nine, ten, and fourteen.
 {¶ 6} On the six remaining counts, the jury returned the following verdict: not guilty on count two of Theft occurring "on or about March 2, 2007"; guilty on count three of Receiving Stolen Property occurring "on or about March 11, 2007"; not guilty on count six of Grand Theft of a Motor Vehicle occurring "on or about March 2, 2007 through on or about March 29, 2007"; not guilty on count eleven of Tampering with Evidence occurring "on or about March 2, 2007 through on or about March 29, 2007"; not guilty on count thirteen of Intimidation of an Attorney, Victim, or Witness occurring "on or about March 21, 2007"; and guilty on count fifteen of Engaging in a Pattern of Corrupt Activity occurring "on or about March 2, 2007 through on or about March 29, 2007."
 {¶ 7} Lightner made a timely motion for judgment of acquittal on the two remaining counts, and a hearing was held in conjunction with the sentencing hearing on June 11, 2008. The trial court upheld the judgment on the Receiving Stolen Property, but reduced the judgment on Engaging in a Pattern of Corrupt Activity from a first degree felony down to a second degree felony because the predicate offense of Receiving Stolen Property was only a felony of the fifth degree, rather than a felony of the third degree. Then the trial court sentenced Lightner to eleven months for the Receiving Stolen Property conviction, and five *Page 5 
years for the Engaging in a Pattern of Corrupt Activity conviction. These sentences were to run consecutively, for a total of five years and eleven months.
 {¶ 8} Lightner now appeals and raises two assignments of error.
 ASSIGNMENT OF ERROR NO. I The trial court erred as a matter of law when it denied Defendant's Crim. R. 29 motion for acquittal, as the evidence is insufficient to support a conviction under ORC § 2923.32 because the State failed to prove beyond a reasonable doubt the "essential element" of two predicate offenses and the existence of an "enterprise".
 {¶ 9} In his first assignment of error, Lightner argues that to be convicted of R.C. 2923.32, engaging in a pattern of corrupt activity, the State must prove at least two predicate offenses of corrupt activity and that Lightner was part of an enterprise. Lightner claims that because he was found not guilty on all but one count, the State would have had to rely on his previous conviction in 2003 (or another unindicted offense) to establish R.C. 2923.32's second predicate offense. However, according to Lightner, because the State failed to provide notice of its intent to use the 2003 conviction and failed to provide sufficient evidence of the 2003 conviction, the State failed to provide sufficient evidence to support a conviction of engaging in a pattern of corrupt activity. In addition, Lightner claims that the State had to have shown Lightner was a part of an "enterprise" in his 2003 conviction, but because the State failed to show this element, there was *Page 6 
not sufficient evidence to support his engaging in a pattern of corrupt activity conviction.
 {¶ 10} The State responds by acknowledging that it had never intended on using any unindicted offenses nor Lightner's 2003 conviction to establish the necessary second predicate offense under R.C. 2923.32. However, the State argues that although counts one, four, five, seven, eight, nine, and fourteen had been voluntarily dismissed prior to the case being submitted to the jury, those counts could have still been considered and used to support a second predicate offense under R.C. 2923.32. Furthermore, the State contends that it did prove a second predicate offense beyond a reasonable doubt because there was undisputed evidence in the record to support the other theft and receiving stolen property counts that had not been submitted to the jury. Moreover, because there was evidence that three other people were involved on more than one occasion, there was sufficient evidence to support the element of an enterprise.
 {¶ 11} An appellate court reviews a denial of a Crim. R. 29 motion for judgment of acquittal using the same standard that is used to review a sufficiency of the evidence claim. State v. Carter (1995),72 Ohio St.3d 545, 553, 651 N.E.2d 965. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1981), *Page 7 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds inState v. Smith (1997), 80 Ohio St.3d 89, 684 N.E.2d 668. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 12} Lightner was found guilty of violating R.C. 2923.32(A)(1), which states:
 (A)(1) No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.
R.C. 2923.31(C) defines "enterprise" as the following:
 * * * any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. `Enterprise' includes illicit as well as licit enterprises.
Moreover, R.C. 2923.31(E) defines "pattern of corrupt activity" to mean:
 two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.
 {¶ 13} Here, the predicate incidents that Lightner was alleged to have engaged in included theft, receiving stolen property, grand theft of a motor *Page 8 
vehicle, tampering with evidence, breaking and entering, and intimidation of an attorney, witness, or victim of a criminal case.
 {¶ 14} We start by addressing Lightner's argument that since he was only convicted of one count of receiving stolen property, the only other predicate act that would have been sufficient to support the engaging in a pattern of corrupt activity charge was his 2003 conviction. Lighter claims that he was not given sufficient notice of the State's intent to use the 2003 conviction, and that the State failed to provide sufficient evidence of his conviction.
 {¶ 15} First of all, we note that the State in its reply brief acknowledges that it had never intended to use Lightner's 2003 conviction as its predicate offense. Although the predicate acts in R.C. 2923.31 need not be supported by convictions, their occurrence must at least be proven beyond a reasonable doubt. State v. Burkitt (1993),89 Ohio App.3d 214, 222-23, 624 N.E.2d 210. In addition, the State must set forth the requisite predicate acts in the indictment that it intends on using as the foundation for a R.C. 2923.32 offense. State v.Warden, 6th Dist. No. WD-03-065, 2004-Ohio-6306, ¶ 48. This Court has previously stated that "where a defendant is required to defend himself against additional unindicted predicate offenses, he should be notified of such by identification of those charges within the indictment."State v. Roberson, 3d Dist. No. 5-02-45, 2003-Ohio-4627, ¶ 13, quotingState v. Siferd, 3d Dist. No. 151 Ohio App.3d 103, 2002-Ohio-6801,783 N.E.2d 519, ¶ 23. However, this Court has also found that if the unindicted offense *Page 9 
is not mentioned in the indictment, but is later mentioned in the bill of particulars, there is sufficient notice to the defendant and such defect in the indictment is harmless. Id. at ¶ 16.
 {¶ 16} Here, the State failed to mention it would be using Lightner's 2003 conviction as a predicate act in its indictment. (Indictment, Doc. No. 1). In addition, Lightner's defense attorney failed to request a bill of particulars, so one was never filed in the record; thus, this Court cannot presume that Lightner was given such notice in the bill of particulars either. Although there is evidence in the record that the State did eventually notify Lightner of its intent to use his 2003 conviction (Answer to Lightner's Discovery Request), the State never submitted any records of Lightner's prior conviction into evidence. (State's Discovery, Doc. Nos. 13, 14). In fact, the only evidence presented as to Lightner's 2003 conviction came from the testimony of Detective Marc Coffman who testified that he was familiar with Lightner since he had been involved with Lightner and his brother's prior conviction in 2003 for stealing scooters. (May 27, 2008 Tr. at 198-99).
 {¶ 17} Nevertheless, the most problematic issue with using Lightner's 2003 conviction as the predicate offense for the R.C. 2923.32 conviction is that the trial court never instructed the jury that it could have considered this conviction as a basis for the R.C. 2923.32 offense. As stated above, the predicate acts need not be supported by convictions, as long as they are proven beyond a reasonable doubt. Yet, the only way to ensure that the State has satisfied its burden in proving those *Page 10 
predicate acts occurred beyond a reasonable doubt is with the trial court's jury instructions. State v. Reyes, 6th Dist. No. WD-03-059,2005-Ohio-2100, ¶ 29, citing State v. Stacy, 12th Dist. No. CA2002-03-073, 2003-Ohio-3695, ¶ 7 (citations omitted). "Failure to instruct the jury as to the elements of a crime is not corrected just because a reviewing court decides, after the fact, that sufficient evidence existed to support [the] conviction." Id. This Court has previously found that it was plain error when the trial court failed to instruct the jury as to all the essential elements to support one of the predicate offenses. State v. Adkins, 136 Ohio App.3d 765, 782-83,737 N.E.2d 1012 (finding that failure to instruct the jury that it had to find the defendant possessed at least one thousand grams of marijuana rendered the predicate offense inadequate to support the R.C. 2923.32
conviction as a matter of law). As it relates to a prior conviction, while the trial court does not have to instruct the jury that it must find that all of the elements of the prior conviction existed, "[t]he [factfinder] must find that the prior conviction has been established in order to find the defendant guilty." State v. Bort (Nov. 4, 1998), 9th Dist. No. 96CA006597, at *2, quoting State v. Day (1994),99 Ohio App.3d 514, 517, 651 N.E.2d 52 (citation omitted).
 {¶ 18} Here, the trial court did not instruct the jury that it could have considered the 2003 conviction, let alone any other unindicted offense. In fact, the trial court limited the jury to only considering the offenses that had been *Page 11 
committed between March 2, 2007 and March 29, 2007. Specifically, the trial court stated to the jury in regard to the R.C. 2923.32 offense:
 The Defendant is charged in count fifteen of the indictment with engaging in a pattern of corrupt activity. Before you can find the Defendant guilty, you must find beyond a reasonable doubt that the Defendant, from on or about March 2, 2007 through on or about March 29, 2007, and in a continuing course of criminal conduct between Hardin County and Auglaize County in Ohio, while employed by or associated with an enterprise, conducted or participated in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity.
(Jury Instructions at 13). However, the Crim. R. 29 motion hearing/sentencing hearing, when deciding whether there had been sufficient evidence to support the R.C. 2923.32 conviction, the trial court made the following findings:
 Therefore Defendant's motion for acquittal on count fifteen is denied, as there was sufficient evidence before the Jury that convinced them of his guilt beyond a reasonable doubt on the predicate offense of receiving stolen property, a felony of the fifth degree. Further, there was evidence before the Jury of this Defendant and others were convicted of other crimes in the past, all of which supports the conviction of Defendant on count fifteen.
(June 11, 2008 Tr. at 6). The trial court found that the R.C. 2923.32
conviction was proper because there had been sufficient evidence to support the receiving stolen property conviction and that there was sufficient evidence of Lightner's previous conviction as the basis for the second predicate act. (Id.). However, the trial court never instructed the jury that it could have considered this conviction as *Page 12 
a predicate act, since it had limited Lightner's alleged pattern of corrupt activity from March 2, 2007 to March 29, 2007.
 {¶ 19} Therefore, even though the State concedes that it had never had any intention of using the 2003 conviction as a predicate offense for R.C. 2923.32, we find that under the facts of this case, the 2003 conviction could not have been a basis for the conviction as a matter of law.
 {¶ 20} Next we address the State's argument that the R.C. 2923.32
conviction is proper because the jury could have considered the counts that it had previously dismissed. Specifically, the State argues that the record supports that the predicate acts of theft (count one), receiving stolen property (counts four, eight and nine), and grand theft of a motor vehicle (counts five and seven) were proven beyond a reasonable doubt. The State points to the following evidence:
 1. On March 2, 2007, Brandie Holland returned home and discovered her son's ATV by the road and that one of her other ATVs had been stolen. (May 27, 2008 Tr. at 107-10, 120). The family filed a police report. (Id. at 109-10). According to Joseph Holland, the ATV was worth purportedly $2,500.00. (Id. at 119, 125). The Holland's ATV was returned to them by the Hardin County Sheriff's Department. (Id. at 120, 126).
 2. On March 11, 2007, Jason Hennon discovered one of his ATVs, which he had purchased for $925.00, had been stolen from his shed. (Id. at 94). He filed a police report with the Auglaize County Sheriff's Department. (Id. at 103).
 3. On March 21, 2007, Hardin County Sheriff's Department searched the residence of Ben Fowler and discovered three ATVs under boxes, bicycles, signs and other items. (Id. at 181-84). The ATVs were impounded, and after running their serial *Page 13 
numbers through a database, two of the ATVs were returned to their original owners, the Hennons and the Hollands. (Id. at 185).
 4. Ben Fowler, as part of a negotiated plea to three counts receiving stolen property, testified that sometime in March he met up with Lightner, Lightner's brother and Bubba out in the country towards Ada. (Id. at 136-37, 156-57). He stated that he had observed Lightner and his brother push an ATV out to the side of the road, and that he and Bubba helped them load it into a truck. (Id. at 137-39). Ben further testified that Lightner and his brother followed them in two other ATVs back to Bubba's house. (Id. at 139). However, later the ATVs were stored at Ben's mother's house in the country. (Id. at 143). Ben stated that Lightner and his brother came out and rode the ATVs on several occasions. (Id. at 149). Ben believed that the ATVs belonged to Lightner and his brother, and only knew the ATVs were stolen when the sheriff's department came out to his house.
(State's Brief at 9-13).
 {¶ 21} Based on the above evidence, the State contends that the record clearly supports that Lightner committed the thefts and/or receiving stolen property of the Holland and Hennon's ATVs on March 2, 2007 and March 11, 2007, respectively. Essentially, the State claims that, as per Ben's testimony, because "Ben only went out with Appellant, his brother and Bubba on one occasion, when they went over by Ada. * * * As the Holland theft occurred in Ada on March 2, 2007 it can be inferred that Ben was present on this one occasion." (State's Brief at 12). However, the State further states that "since the Hennon theft occurred in Auglaize County on March 11, 2007, and his ATV was one of the three recovered on March 21, 2007 by the Hardin County Sheriff's Department, it *Page 14 
was not one of the three taken on the night Ben was involved." (Id.). Thus, through its brief the State has admittedly limited Fowler's direct involvement to only the Holland theft in Ada on March 2, 2007.
 {¶ 22} Lighter was originally indicted on fifteen counts, although of the fifteen counts, only six counts were actually submitted to the jury for consideration, including the engaging in a pattern of corrupt activity violation, after defense counsel made a Crim. R. 29(A) motion for a judgment of acquittal. Under Crim. R. 29(A) a trial court on motion of a defendant, "after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." After a review of the record, we find that the trial court's judgment of acquittal was proper, because we do not believe that the State proved beyond a reasonable doubt that Lightner committed the theft offense in count one, the receiving stolen property offenses in counts four, eight and nine, and the grand theft of a motor vehicle in counts five and seven. As a result, we believe that there was insufficient evidence of those offenses to support the State's argument that any one of those acts could be used as the second required predicate act under R.C. 2923.32.
 {¶ 23} In count one, Lightner was charged with committing a theft offense as defined under R.C. 2913.02(A)(1), which states, "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control *Page 15 
over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent." This count only covered the theft offense committed on March 11, 2007, the theft of the Hennon's ATV. (Indictment, Doc. No. 1). After a review of the record, we believe that there was insufficient evidence to support a conviction under R.C. 2913.02(A)(1).
 {¶ 24} At trial, the State presented testimony from a co-conspirator, Ben Fowler, who had already been convicted of three counts of receiving stolen property. (May 27, 2008 Tr. at 135). Fowler testified that sometime in March, he and someone named "Bubba" had gone out to the country to help Lightner and his brother load an ATV onto a truck. (Id. at 139, 160). They then drove down the road a little bit further and picked up two more ATVs, one of which had broken down. (Id. at 159-60). They took these ATVs to Bubba's house and rode them around for a while. (Id. at 160). Fowler testified that later on they moved the ATVs to a shed behind his mother's house. (Id. at 141). In addition, Fowler stated that Lightner and his brother had on several occasions come out to his residence and rode the ATVs. (Id. at 149). However, Fowler acknowledged that he believed the ATVs belonged to Lightner and his brother, and it was only when the detectives came out to search his property that he had knowledge that the ATVs were stolen. (Id. at 160-61).
 {¶ 25} In addition, Danielle LaWarre testified about a conversation she had with Lightner and his brother. (Id. at 175). She said that she had overheard *Page 16 
Lightner and his brother discussing some ATVs, and she asked them whether they were talking about the ones that they had stolen. (Id. at 176). According to LaWarre's testimony, Lightner said that the ATVs were stolen by Ben Fowler, but at no time did Lightner admit that he had stolen the ATVs. (Id. at 177, 179). She further testified that Lightner and his brother would call Fowler at her house and ask him if they could take the ATVs out and ride them. (Id. at 176).
 {¶ 26} Moreover, Detective Marc Coffman and Detective David Holbrook testified that they saw Lightner at the multi-county jail in 2008 and executed a court order which mandated Lightner to give a writing exemplar. (May 27, 2008 Tr. at 189, 194). Detective Coffman said that the reason for this court order was because they had obtained a letter, from an unknown author, who had indicated their involvement in the theft of one of the ATVs. (Id. at 196-98). In addition to entering the letter into evidence, Detective Coffman read the following passage from the letter:
 Coffman: Me and John Byers and Ben Fowler was riding my four wheelers to Alger, and one of them blowed up and we decided to go find one, and we went back to my house and got my dad's truck, and Bubba drove it out to get the four wheeler that blowed up, and we went down 195 towards Ada. We seen them in a garage and all three of us went in and pushed out two four wheelers and put one of them in the truck, and we jumped in and took it to Ben's house to ride them a couple of days later. We took it to Bubba's house to put it in the shed, and Bubba painted it. We then had to take it back to Ben's house and he put it in his shed. *Page 17 
(Id. at 201). Even though Lightner had admitted to Detective Coffman that he had only written that letter in question upon the advice of his attorney, Detective Coffman admitted that the letter's author only admitted stealing one ATV, not three; and as of the date of the trial, the State's crime lab had yet to analyze Lightner's writing samples. (Id. at 201-02).
 {¶ 27} Lightner was not convicted of the theft on March 2, 2007, so the jury did not believe, even considering the contents of the letter, that the State had proven beyond a reasonable doubt that Lightner had stolen the Holland's ATV on March 2, 2007. However, the State has admittedly in its brief tied Ben's testimony to the theft offense on March 2, 2007, because of its proximity to Ada, Ohio. Moreover, the letter the State admitted into evidence purportedly relates to the theft offense that occurred on March 2, 2007, because of its proximity to Ada, Ohio. The Hennon's were unable to identify the person(s) who had stolen their ATV, and no witnesses testified that Lightner admitted to stealing the Hennon's ATV. We find that the record is devoid of any testimony or evidence relating to the theft offense on March 11, 2007. We also find it dispositive that after the State's case-in-chief, in response to Lightner's Crim. R. 29's motion for acquittal on count one, the State voluntarily agreed to dismiss the count because it "really [didn't] have any direct evidence of that." (Id. at 210). Therefore, even if the jury could have considered the March 11, 2007 theft offense, there was not sufficient evidence to support this predicate act. *Page 18 
 {¶ 28} Likewise, we find that there was insufficient evidence to support the predicate acts in counts five and seven. Grand theft of a motor vehicle is defined under the same section as "theft," except that it specifically involves the theft of a motor vehicle. R.C. 2913.02(A)(1), (B)(5). ATVs, or all terrain vehicles, are three or four wheeled vehicles that fall within the definition of a "motor vehicle" pursuant to R.C. 2913.01(FF). See R.C. 4501.01(B); State v. Gray (Feb. 27, 1998), 2nd Dist. No. 16474, at *1. Count five was intended to cover the theft offense on March 11, 2007, or the Hennon's ATV. (Indictment, Doc. No. 1); (May 27, 2008 Tr. at 211). Again, the jury returned a verdict of not guilty as to count six, or the theft offense on March 2, 2007 (the Holland theft). Additionally, the record is devoid of any evidence or testimony in regard to any theft offense committed on March 11, 2007. We also find it dispositive that the State voluntarily dismissed count five, just like in count one, "because there [was] no evidence of that." (Id. at 211).
 {¶ 29} As to count seven, the State admitted on the record that it had intended count seven as a more expansive version of count six, thus it voluntarily dismissed count seven because count six was a "[m]ore specific date of the theft on the 2nd, * * * a more accurate date." (Id. at 211). Therefore, there was no difference between counts seven and six, and because the jury returned a not guilty verdict as to count six, we find that there was insufficient evidence to support the same predicate act in count seven. *Page 19 
 {¶ 30} Thus, as to counts five and seven, we find that there was not sufficient evidence presented to the jury for them to have relied on those as underlining predicate acts.
 {¶ 31} Finally, as to counts four, eight, and nine (the other receiving stolen property counts), we find it dispositive that at trial the State voluntarily dismissed counts eight and nine because they were "redundant" with counts three and four. However, as to count four, the record is not clear as to why the State dismissed it, except that it did so in "the interest of justice." (May 27, 2008 Tr. at 216-17). But based on the evidence presented to the jury, except for the fact that the Hennon's ATV was found at Ben Fowler's residence and Lightner had allegedly used this ATV on several occasions, there is only evidence linking Lightner to one ATV. Therefore, because the evidence in the record only supports that Lightner knowingly or with reckless disregard received one stolen ATV, there was insufficient evidence to support the predicate acts in counts four, eight, and nine.
 {¶ 32} Overall, Lighter was originally indicted on fifteen counts, although of the fifteen counts, only six counts were actually submitted to the jury for consideration, including the engaging in a pattern of corrupt activity violation. As to the Crim. R. 29(A) motion for a judgment of acquittal, the trial court granted the defense's motion as to counts one, four, five, seven, eight, nine, ten, and fourteen, which under the rule meant that the trial court found that there was insufficient evidence to sustain a conviction on those offenses. In addition, the jury only *Page 20 
returned guilty verdicts on count three, receiving stolen property on or about March 11, 2007; and count fifteen, engaging in a pattern of corrupt activity. Because of the evidence in the record, and the way the charges against Lightner were filed and then narrowed down throughout the trial, we believe that the trial court erred in not granting Lightner's Crim. R. 29 motion on the pattern of corrupt activity offense. We believe, in this case, that there was not evidence of a second predicate act that would have established a "pattern of corrupt activity" necessary for a conviction.
 {¶ 33} The Court of Appeals for the 6th District similarly reversed a conviction under R.C. 2923.32 on the basis that there was not sufficient evidence to support a second predicate act. State v. Reyes, 6th Dist. No. WD-03-059, 2005-Ohio-2100. In that case, the defendant had been indicted on three counts: two separate counts of trafficking in cocaine on two different occasions; and one count of engaging in a pattern of corrupt activity. Id. at ¶ 2. After a four-day jury trial, the defendant was found not guilty as to count one of trafficking in cocaine, but guilty as to count two of trafficking in cocaine, and guilty as to count three of engaging in a pattern of corrupt activity. Id. The 6th District acknowledged that the R.C. 2923.32 conviction could have been supported by an unindicted predicate act; however, in that case, the trial court had failed to instruct the jury that it could have consideredany unindicted offenses. Id. at ¶¶ 30-31. Therefore, the court concluded, *Page 21 
 [i]n sum, with a not guilty verdict on Count 2, and no jury instruction as to any other offense that could serve as a predicate act, the state proved only one predicate act beyond a reasonable doubt. Because R.C. 2923.31(E) requires that the state prove the occurrence of two or more predicate acts beyond a reasonable doubt, there was insufficient evidence upon which the jury could convict appellant of engaging in a pattern of corrupt activity.
Id. at ¶ 35.
 {¶ 34} Here, there was insufficient evidence to prove beyond a reasonable doubt that another predicate offense occurred considering the State presented sufficient evidence linking Lightner to only one of the ATVs. In addition, the trial court failed to instruct the jury that it could have considered any other unindicted offenses, including Lightner's previous 2003 conviction. Because the jury only found Lightner guilty as to receiving stolen property as it related to only one of the ATVs, we find that there was insufficient evidence upon which the jury could have convicted Lightner of engaging in a pattern of corrupt activity.
 {¶ 35} Lightner's first assignment of error is, therefore, sustained.
 ASSIGNMENT OF ERROR NO. II The trial court erred as a matter of law when it denied Defendant's Crim. R. 29 motion for acquittal, as the evidence is insufficient to support a conviction under ORC § 2913.51(A) because the State failed to prove beyond a reasonable doubt that the Defendant knowingly received stolen property.
 {¶ 36} In his second assignment of error, Lightner argues that the State failed to provide sufficient evidence to show the "knowing" element of the crime receiving stolen property. The State responds by arguing that it did provide *Page 22 
sufficient evidence that Lightner had actual knowledge, or at least had reasonable cause to believe that the ATVs were stolen. For the reasons stated below, this Court finds Lightner's argument lacks merit.
 {¶ 37} As stated previously, this Court reviews a denial of a Crim. R. 29 motion for judgment of acquittal using the same standard that is used to review a sufficiency of the evidence claim. Carter,72 Ohio St.3d at 553. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in Smith, 80 Ohio St.3d 89.
 {¶ 38} The crime receiving stolen property is defined under R.C. 2913.51(A), which states, "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." Knowledge exists when, regardless of their purpose, a person "is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Furthermore, if the defendant has not admitted to the crime, then only circumstantial evidence can be used prove that the defendant had reasonable cause to believe the item was stolen. State v.Tolbert, 9th Dist. No. 21203, 2003-Ohio-2160, ¶ 17, *Page 23 
citing State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, ¶ 18 (citations omitted). After a review of the record, we believe there was sufficient evidence from which a rational trier of fact could have found that Lightner knew, or at least had reason to believe, that one of the ATVs was obtained through the commission of a theft offense.
 {¶ 39} At trial, the State presented testimony from a co-conspirator, Ben Fowler, who testified that sometime in March, he and someone named "Bubba," had gone out to the country to help Lightner and his brother load an ATV onto a truck. (May 27, 2008 Tr. at 139, 160). Then they drove down the road and picked up two more ATVs, one of which had broken down. (Id. at 159-60). Eventually, they moved the ATVs out in a shed behind Fowler's mother's house. (Id. at 141). Fowler testified that on several occasions Lightner and his brother would come out to his residence and ride the ATVs. (Id. at 149). However, Fowler acknowledged that he believed the ATVs belonged to Lightner and his brother, and it was only when the detectives came out to search his property that he had knowledge that the ATVs were stolen. (Id. at 160-61).
 {¶ 40} In addition, the State had the testimony from Danielle LaWarre who testified that Lightner had told her that the ATVs were stolen by Ben Fowler, but at no time did Lightner admit that he was the one that had stolen the ATVs. (Id. at 177, 179). She further testified that Lightner and his brother would call Fowler at her house and ask him if they could take the ATVs out and ride them. (Id. at 176). *Page 24 
 {¶ 41} Moreover, when Detective Marc Coffman and Detective David Holbrook saw Lightner at the multi-county jail in 2008 to execute a court order which mandated Lightner to give a writing exemplar, Lightner admitted to Detective Coffman that he had only written that letter in question upon the advice of his attorney. (May 27, 2008 Tr. at 189, 194, 201). At trial, Detective Coffman read the following passage from the document in question:
 Coffman: Me and John Byers and Ben Fowler was riding my four wheelers to Alger, and one of them blowed up and we decided to go find one, and we went back to my house and got my dad's truck, and Bubba drove it out to get the four wheeler that blowed up, and we went down 195 towards Ada. We seen them in a garage and all three of us went in and pushed out two four wheelers and put one of them in the truck, and we jumped in and took it to Ben's house to ride them a couple of days later. We took it to Bubba's house to put it in the shed, and Bubba painted it. We then had to take it back to Ben's house and he put it in his shed.
(Id. at 201). Even though Lightner admitted to writing the letter, Detective Coffman admitted that the letter only indicated the theft of one ATV, not three ATVs. (Id. at 201-02). Furthermore, as of the date of the trial, the State's crime lab had yet to analyze and return any results on the writing samples given by Lightner. (Id.).
 {¶ 42} As stated above, Lightner was not convicted of theft of any of the ATVs, so the jury did not believe, even considering the contents of the letter, that the State had proven beyond a reasonable doubt that Lightner had stolen any of the ATVs. However, through Fowler's testimony, there was evidence that Lightner *Page 25 
had been actively involved in someway, at least on one date as to one ATV, and had used the ATVs on several occasions. (May 27, 2008 Tr. at 139-149). In addition, there was the testimony from LaWarre who stated that, even though Lightner had not admitted that he had stolen the ATVs, she did testify that he at least knew that the ATVs were stolen when he told her that Fowler had stolen them. (Id. at 176-179). Furthermore, despite knowing that Fowler had stolen the ATVs, LaWarre stated that Lightner and his brother called Fowler and asked to ride the ATVs a few times. (Id.). In addition, there was the letter purportedly written by Lightner, which admitted to knowledge and involvement in one of the ATV thefts. (State's Ex. 1).
 {¶ 43} Thus, after a review of the record and construing the evidence in light of the prosecution, we find that there was sufficient evidence to show that Lightner had at least reason to believe, if not knew, that at least one of the ATVs had been obtained through the commission of a theft offense.
 {¶ 44} Lightner's second assignment of error is, therefore, overruled.
 {¶ 45} Having found error prejudicial to the appellant herein as to appellant's first assignment of error in the particulars assigned and argued, we reverse the judgment of the trial court as to appellant's first assignment of error and remand for further proceedings consistent with this opinion.
 {¶ 46} However, having found no error prejudicial to the appellant herein as to appellant's second assignment of error in the particulars assigned and argued, *Page 26 
we affirm the judgment of the trial court as to the appellant's second assignment of error.
Judgment Affirmed in Part, Reversed in Part, and Cause Remanded
 ROGERS and SHAW, J. J., concur. *Page 1