[Cite as *State v. Robinson*, 2021-Ohio-2871.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                   CASE NO.  2-20-20

    v.

SHAWN LEE ROBINSON,                O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2020 CR 8

Judgment Affirmed

Date of Decision:   August 23, 2021

APPEARANCES:

    *Rob C. Wiesenmayer, II* for Appellant

    *Joshua A. Muhlenkamp* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Shawn Lee Robinson ("Robinson"), appeals the July 22, 2020 judgment entry of conviction and September 23, 2020 judgment entry of sentence of the Auglaize County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from drug-related activity occurring on October 14, 2019 at a gas station in Wapakoneta, Ohio involving the Grand Lake Task Force ("GLTF"), a confidential informant ("CI"), and Robinson's co-defendant, Charles Miranda, II ("Miranda").

{¶3} On January 3, 2020, the Auglaize County Grand Jury indicted Robinson on one count of aggravated trafficking in drugs (methamphetamine) in violation of R.C. 2925.03(A)(1), (C)(1)(a), a fourth-degree felony. (Doc. No. 1). On January 9, 2020, Robinson was arraigned and entered a plea of not guilty. (Doc. No. 11).

{¶4} Robinson's case proceeded to a jury trial on July 21, 2020 wherein he was found guilty of the single count in the indictment. (Doc. Nos. 80, 81); (July 21& 22, 2020 Tr. at 287-289, Doc. No. 130). On September 22, 2020, the trial court sentenced Robinson to prison for a term of 18 months. (Doc. No. 94). The trial court's judgment entry was filed stamped on September 23, 2020. (*Id.*).

{¶5} Robinson filed his notice of appeal on October 22, 2020 and raises the following three assignments of error for our review. (Doc. No. 110).

## Assignment of Error No. I

**The Trial Court's Decisions Finding The Defendant-Appellant Guilty Was Against The Manifest Weight Of The Evidence.**

## Assignment of Error No. II

**The Trial Court Erred In Not Granting The Defendant's Motion For Acquittal Pursuant To Criminal Rule 29, In That The Evidence Of The State Of Ohio Was Insufficient For The Matter To Have Been Submitted To The Jury.**

## Assignment of Error No. III

**The Trial Court Erred In Allowing The Admission Of The Jail House Phone Calls Made By The Defendant Into Evidence.**

{¶6} For ease of our discussion, we will review Robinson's third assignment of error first, followed by his second assignment of error, and then his first assignment of error.

## Assignment of Error No. III

**The Trial Court Erred In Allowing The Admission Of The Jail House Phone Calls Made By The Defendant Into Evidence.**

{¶7} In his third assignment of error, Robinson argues that the trial court erred in admitting two telephone calls (State's Exhibits 8 and 9) originating from the Auglaize County Jail ("ACJ"). Specifically, Robinson asserts that Investigator Rex Pack's ("Pack") testimony is insufficient to lay a foundation for and to authenticate those exhibits under Evid.R. 901(B).

*Standard of Review*

{¶8} The admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001), citing *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

*Analysis*

{¶9} Evid.R. 901 "governs authentication and provides a liberal standard for authentication of telephone calls." *State v. Reno*, 4th Dist. Ross No. 04CA2759, 2005-Ohio-1294, ¶ 18, citing *State v. Vrona*, 47 Ohio App.3d 145, 149 (9th Dist.1988). Evid.R. 901(A) provides that "authentication or identification" is a condition precedent to the admissibility of evidence. This requirement is satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). "'Telephone conversations are admitted where the identity of the parties is "satisfactorily explained."'" *Reno* at ¶ 18, quoting *State v. Williams*, 64 Ohio App.2d 271, 274 (8th Dist.1979). "'There is no fixed identification requirement for all calls.' * * * "Each case has its own set of facts."'" *Id.*, quoting *Vrona* at 149. Circumstantial and direct evidence may be used to

demonstrate authenticity. *Williams* at 274. Importantly, the threshold standard for authentication is low under Evid.R. 901(A), and "'does not require conclusive proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that * * * [the evidence] is what its proponent claims it to be.'" *Reno* at ¶ 18, quoting *State v. Easter*, 75 Ohio App.3d 22, 25 (4th Dist.1991). Evid.R. 901(B) provides illustrations (methods) by which authentication and identification can be achieved.

{¶10} Here, Robinson asserts two arguments: 1) that the State failed to lay a proper foundation as to the authenticity of the jail-telephone calls, and 2) that the voice identification of Robinson is flawed under Evid.R. 901(B)(5) because Robinson was high at the time of his interview with Pack (evidenced by his slurred speech), thus rendering it "compromised" and that Pack seemed unsure as to his recollection under division (B)(5) by using the word "think" during cross-examination. (Appellant's Brief at 8-9). Consequently, we undertake a review of the record.

{¶11} The State presented Pack as a witness to identify Robinson's voice on the recorded jailhouse-phone calls. (July 21 & 22, 2020 Tr. at 191). Pack testified that he conducted an in-person interview of Robinson following his arrest. (*Id.* at 198); (State's Ex. 6). After interviewing Robinson, Pack investigated Robinson's emails sent from the jail and listened to his jail calls. (*Id.*). According to Pack, he

did not know from which inmate account the jail calls originated, but he was able to identify Robinson's voice in those calls based on his prior interview of Robinson. (*Id.* at 204). *See* Evid.R. 901(B)(5). Pack discerned three separate voices on the first jail call (one voice he identified as the recording from the jail software, one voice was a male (Pack identified as Robinson), and one voice was an unidentified female). (*Id.* at 206-212); (State's Ex. 8). On the second call, two voices were noted by Pack (this time both males (one he identified as Robinson and one an unidentified male)). (*Id.*); (State's Ex. 9).

{¶12} Here, Robinson does not dispute that the jail calls were made from the ACJ or that Pack accessed them pursuant to his role with the GLTF. Rather, Robinson disputes that it is his voice on the calls. (*See* Appellant's Brief at 8-9). As such, Robinson is arguing that the authentication and identification requirements under Evid.R. 901 as the origination of the jailhouse calls is critical to voice identification. We disagree.

{¶13} Under the facts presented, the underlying circumstances of the origination of telephone calls is not determinative of the authenticity or identification of the voices recorded during the jail call. Pack testified that he has access to the ACJ telephone calls placed by inmates through the ACJ's software obviating the need to go through correctional staff to access those calls. (*Id.* at 210). According to our review of the record, Pack testified that he heard Robinson's voice

firsthand during Robinson's interview and later through the two recorded jail calls. (July 21 & 22, 2020 Tr. at 206-212). *See* Evid.R. 901(B)(5). *Compare* Evid.R. 901(B)(6). Pack testified he was able to identify Robinson's voice based on his previous contact with Robinson. (*Id.*). *See* Evid.R. 901(B)(5). Even though, Robinson argues that authentication *required* the State to present the foundational testimony of a correctional officer (from the ACJ) to testify that the jail call was placed under Robinson's personal identification number ("PIN") when the call was initiated, we find no merit to such assertion. *See Reno*, 2005-Ohio-1294, at ¶ 20, citing Evid.R. 901(B)(6) (concluding that the trial court did not abuse its discretion in admitting a taped telephone conversation where the State presented sufficient evidence that a law enforcement officer recognized Reno's voice and that no requirement exits that the State *also* authenticate the tape under R.C. 901(B)(6)). Therefore, we overrule Robinson's lack-of-foundation argument.

{¶14} Next, Robinson asserts Pack's voice identification of him is questionable. Specifically, Robinson suggests that Pack, on cross-examination, was unsure as to whether it was Robinson's voice on the jail call. In our review of Pack's testimony, we conclude that Pack was able to the identify Robinson's voice in the jail calls during direct and under cross-examination. (*Id.* at 204-208). Moreover, the trier of fact (the jury) listened to State's Exhibit 6 (Pack's interview with Robinson) and State's Exhibits 8 and 9 (the two recorded jail calls) during the course

of the trial, and after all three exhibits were admitted into evidence. (*Id.* at 199-212, 221-222, 226, 252-254); (State's Exs. 6, 8, 9). Thus, Robinson's argument goes to the *weight* the jury placed on the evidence and not admissibility of the evidence itself. *See State v. Jackson*, 4th Dist. Athens No. 18CA7, 2020-Ohio-7034, ¶ 26. We must defer to the trier of fact as to the weight they placed on the credibility as to each witnesses' testimony. *See id*.

{¶15} Accordingly, we cannot conclude that the trial court abused its discretion by determining that the appropriate foundation was laid for State's Exhibits 8 and 9; that those exhibits were properly authenticated; and thereafter, admitting them into evidence.

{¶16} Accordingly, Robinson's third assignment of error is overruled.

**Assignment of Error No. II**

**The Trial Court Erred In Not Granting The Defendant's Motion For Acquittal Pursuant To Criminal Rule 29, In That The Evidence Of The State Of Ohio Was Insufficient For The Matter To Have Been Submitted To The Jury.**

{¶17} In his second assignment of error, Robinson argues that the trial court erred by denying Robinson's Crim.R. 29 motion for acquittal because the State presented insufficient evidence to support his aggravated-trafficking-in-drugs conviction. Specifically, Robinson argues that there is insufficient evidence to demonstrate that State proved that he had the requisite mental culpability

(knowledge) or that Robinson played an active role (as the principal offender) in the commission of the offense.

*Standard of Review*

{¶18} Because the purpose of a Crim.R. 29 motion for acquittal "is to test the sufficiency of the evidence presented at trial," we "review[ ] a denial of a Crim.R. 29 motion for judgment of acquittal using the same standard that is used to review a sufficiency of the evidence claim." (Internal citations omitted.) *State v. Diabato*, 3d Dist. Union No. 14-18-23, 2019-Ohio-3542, quoting *State v. Willis*, 12th Dist. Butler No. CA2009-10-270, 2010-Ohio-4404, ¶ 9, citing *State v. Terry*, 12ths Dist. Fayette No. CA2001-07-012, 2002-Ohio-4378, ¶ 9, citing *State v. Williams*, 74 Ohio St.3d 569, 576 (1996) and *State v. Moore*, 3d Dist. Union No. 14-08-43, 2009-Ohio-2106, ¶ 20, citing *State v. Lightner*, 3d Dist. Hardin No. 6-08-11, 2009-Ohio-544, ¶ 11, citing *State v. Carter*, 72 Ohio St.3d 545, 553 (1995). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds, State v. Smith*, 80 Ohio St.3d 89, 102 (1997), fn. 4. Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

*Analysis*

**{¶19}** Here, Robinson was found guilty by the jury of aggravated trafficking in drugs. (*Id.* at 286-289). To establish a conviction for the offense of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), the State must prove that the defendant "[1] knowingly * * * [2] [sold] or offer[ed] to sell [3] a controlled substance or a controlled substance analog."[1] R.C. 2925.03(A)(1), (C)(1)(a). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Furthermore, "[a] person has knowledge of circumstances when the person is aware that such circumstances probably exist." *Id.* "Knowledge can be ascertained from the surrounding facts and circumstances in the case." *State v Anderson*, 12th Dist. Fayette No. CA2008-07-026, 2009-Ohio-2521, ¶ 28, citing *State v. Lott*, 51 Ohio St.3d 160, 168 (1990).

**{¶20}** Robinson argues that his aggravated-trafficking-in-drugs conviction is not supported by sufficient evidence because the State failed to demonstrate that

---

[1] The State and Robinson stipulated as to the admission of Joint Exhibit 1, which included certain paragraphs read into the record stipulating that the methamphetamines at issue are a Schedule II controlled substance, in the amount of 0.85 grams +/- 0.04 grams, confiscated by law enforcement on October 14, 2019, and that the parties further stipulate as to their foundation, relevancy, authentication, chain of custody, and the expert opinion involving those drugs. (July 21 & 22, 2020 Tr. at 100-101); (Joint Ex. 1). Thus, only the first two elements are at issue.

Robinson "knowingly" "[sold] or offer[ed] to sell" methamphetamines to the CI through Miranda. We disagree.

{¶21} Robinson was indicted in terms of the principal offense under 2925.03(A)(1) and not under complicity set forth in R.C. 2923.03. (Doc. Nos. 1, 32). As such, Robinson argues that the evidence is insufficient to establish that he was the principal offender of the offense (let alone) that he is complicit in the commission of the offense.

{¶22} At trial the State presented two witnesses: 1) the CI and 2) Robinson's co-defendant, Miranda, as to Robinson's knowledge and his role as a principal in the "sale or offer to sell" methamphetamines. (July 21 & 22, 2020 Tr. at 134-156, 164-189). The CI testified that while he was in jail, he was approached by the GLTF to assist them in their undercover-narcotics operations for a nominal fee of $100, per drug buy. (*Id.* at 141). The CI agreed to cooperate with law enforcement and ultimately contacted Robinson (through social media) to purchase meth. (*Id.* at 138-139, 142); (*See* State's Exs. 3a, 3b, 3c, 3d). The CI testified that immediately prior to the undercover-narcotics sale, he was wired up for audio and video transmission by law enforcement. (*Id.* at 142-143). The CI was then dropped off near the gas station where Miranda and the CI agreed to meet. (*Id.*). At the gas station, the CI encountered a man who identified himself as "Big Country" (Miranda) who sold him $40 of meth. (*Id.* at 143-144). (*See* State's Exs. 2a, 2b). The CI testified that

Robinson gave him Miranda's number to arrange the meeting location and complete the drug deal. (*Id.* at 146-147).

{¶23} On cross-examination, the CI testified that he is a "drug doer" not a "drug dealer". (*Id.* at 148). He testified that he knew that Robinson used meth and would supply a drug dealer. (*Id.*). Just prior to the arranged drug transaction, the CI testified that Robinson sent him a Facebook message stating: "I got *my dude* ready", which the CI understood to mean Robinson's drug dealer. (Emphasis added.) (*Id.* at 149-150). The CI testified he purchased drugs from Miranda three separate times. (*Id.* at 150).

{¶24} Next, the State offered the testimony of Robinson's co-defendant Miranda. (*Id.* at 162, 164). Miranda testified he goes by the nickname "Big Country", and that, he is presently under felony indictment arising out of Auglaize County for three counts of drug trafficking in relation to the drug transaction with the CI. (*Id.* at 165-166). Miranda testified that he knows Robinson and identified him as the defendant in open court. (*Id.* at 166-167). According to Miranda on October 14, 2019 he awoke early and drove Robinson to Buckland, Ohio between the hours 4:00-5:00a.m. (*Id.* at 167). Once back at his house, Miranda found a bag of meth on his table, which belonged to Robinson. (*Id.* at 169). Miranda testified that he contacted Robinson through Facebook Messenger to tell him he left his bag of meth at his house. (*Id.* at 171). According to Miranda, Robinson told him that

there was someone in town he could contact to get rid of any of the drugs. (*Id.*). Miranda testified that Robinson told him to hold his money (from the drug sale of the meth) until they got together again, and that he could use some of the money for gas. (*Id.*). Miranda testified "that's *usually* how it worked. *He'd give me money for gas.*" (Emphasis added.) (*Id.*). Thereafter, Miranda testified that he made the drug sale with the CI at the gas station after which he put ten dollars of gas in his car and kept the remaining $30 in his safety deposit box at his house to give to Robinson at a later date. (*Id.* at 171-172).

{¶25} Even if we were to assume without deciding that the State did not meet its burden as to a "sale" of drugs by Robinson, we nonetheless conclude that the State met its burden in establishing Robinson's knowledge of and participation in an "offer to sell" drugs. Here, the State clearly established Robinson's involvement in the marketing stage of the criminal enterprise. *See State v. Patterson*, 69 Ohio St.2d 445, 447 (1982), *overruled in part on other grounds*.

> 'Triers of fact should consider the totality of the circumstances and decide whether, in a particular scenario, there is sufficient evidence to prove beyond a reasonable doubt that the accused has *knowingly offered to sell* a controlled substance. For example, the *dialogue* and *course of conduct of the accused*, as well as the nature of the goods transferred, may be relevant to this determination.'

(Emphasis added.) *State v. Ward,* 3d Dist. Crawford No. 3-17-02, 2017-Ohio-8518, ¶ 16, quoting *Patterson* at 447. Importantly, the facts are clear that it was Robinson's meth in the bag that Miranda found on his table; that Robinson

connected the purchaser of the drugs (the CI) to Miranda; that Robinson dictated most of the details of the drug transaction; that Robinson exerted control over the participants in the transaction itself, and that, Robinson controlled the distribution of the drug-sale proceeds. Indeed, in our review of the record, without Robinson's involvement as the principal, there would have been no "offer to sell" the meth in the first instance followed by a consummated transaction (i.e., the drug "sale") by Miranda to the CI.

{¶26} Moreover, Robinson's arguments hinge on a credibility determination as to the State's witnesses, and as to those types of determinations, we give deference to the trier of fact. *See Jackson*, 2020-Ohio-7034, at ¶ 26.

{¶27} Based on the evidence before us, we conclude that a rational trier of fact could conclude beyond a reasonable doubt that Robinson (as the principal) "knowingly" "offer[red] to sell" methamphetamines under his indictment.[2] As such, Robinson's aggravated-trafficking-in-drugs conviction is based on sufficient evidence. Accordingly, we do not conclude that the trial court erred by denying Robinson's Crim.R. 29 motions for acquittal and subsequently submitting his case to the jury.

{¶28} Robinson's second assignment of error is overruled.

---

[2] To the extent that Robinson argued that the State was required to prove that Robinson was complicit, his argument is specious. He was charged as the principal offender, and the evidence supports this determination. (Doc. Nos. 1, 32). *See State v. Mosley*, 55 Ohio App.2d 178, 183 (10th Dist.1977) (concluding that "[t]he crime was committed when the offer was made, not when the transaction was consummated").

### Assignment of Error No. I

**The Trial Court's Decisions Finding The Defendant-Appellant Guilty Was Against The Manifest Weight Of The Evidence.**

{¶29} In his first assignment of error, Robinson argues that his conviction is against the manifest weight of the evidence because the State's witnesses (the CI and Robinson's co-defendant (Miranda)) were "compromised", and since he was not engaged in the "sale or offer to sell" methamphetamines. (Appellant's Brief at 3-4).

*Standard of Review*

{¶30} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by statute on other grounds*, *Smith*, 80 Ohio St.3d at 89, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the

-15-

conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Analysis*

**{¶31}** Here, the evidence we summarized in our analyses of Robinson's third and second assignments of error supporting Robinson's aggravated-trafficking-in-drugs conviction is weightier than the evidence against that conviction.

**{¶32}** Robinson principally argues that the CI's and Miranda's testimonies were not credible and that, we as the "thirteenth juror", should determine that the CI and Miranda offered self-serving testimony in an attempt to curry favor from the State in their pending criminal cases. We disagree. Based on the *entire* record before us, Robinson's argument fails because the trier of fact was in the best position to determine the credibility of witnesses, and thus, we cannot conclude that Robinson's aggravated-trafficking-in-drugs conviction is against the manifest weight of the evidence.

**{¶33}** Accordingly, Robinson's first assignment of error is overruled.

**{¶34}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**MILLER and SHAW, J.J., concur.**
**/jlr**

-16-